UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLEN SELEGEAN,<br><br>Plaintiff,<br><br>-v-<br><br>NEW YORK CITY POLICE DEPARTMENT et al.,<br><br>Defendants. | 25-CV-6141 (JMF)<br><br>OPINION AND ORDER |

JESSE M. FURMAN, United States District Judge:

Plaintiff Allen Selegean was a detective with the New York City Police Department ("NYPD"). In October 2021, New York City issued an order requiring all City employees to show proof of vaccination for COVID-19. Selegean applied for a religious exemption to the policy, which the NYPD denied. After an unsuccessful appeal to a citywide panel, Selegean retired from the NYPD. Thereafter, he brought this lawsuit against the City and NYPD, alleging religious discrimination in violation of federal, state, and local law. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss his Complaint. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are drawn from the Complaint as well as from documents incorporated by reference into, or integral to, the Complaint. *See, e.g.*, *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

Selegean, who is Roman Catholic, was employed as a detective with the NYPD between 2005 and 2022. ECF No. 8 ("FAC"), ¶¶ 2, 9-10. During that time, he was assigned to the "Fire Arms Suppression Section in the Trigger Lock Unit." *Id.* ¶ 20.

On October 20, 2021, in response to the COVID-19 pandemic, the New York City Commissioner of Health and Mental Hygiene issued an Order ("the Vaccine Mandate") directing all City employees, with limited exceptions, to receive at least one dose of the COVID-19 vaccine by 5 p.m. on October 29, 2021. *Id.* ¶ 53; *see* ECF No. 13-2 ("Vaccine Mandate"), ¶¶ 2, 5.[1] Any City employee who failed to provide proof of vaccination by the deadline was to be excluded from his or her assigned work location starting on November 1, 2021. Vaccine Mandate ¶ 3. The Vaccine Mandate further provided that "[n]othing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law." *Id.* ¶ 8.

Consistent with these terms, the City "implemented a procedure for accepting religious and medical accommodation requests." FAC ¶ 56; *see also id.* ¶¶ 59-65. Most relevant here, in a written policy titled "FAQ on New York City Employees Vaccine Mandate," the City explained that "a sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation." *Id.* ¶ 59 (cleaned up). Employees granted such an accommodation could continue working without providing proof of vaccination so long as they masked and submitted a weekly negative COVID-19 test. *Id.* ¶¶ 60, 73, 286. Likewise, employees with pending requests could continue working under the same arrangement. *Id.* ¶ 64.

On October 22, 2021, Selegean requested an accommodation from the NYPD on the ground that vaccination would violate his sincerely held religious beliefs. *See id.* ¶¶ 74-75, 77,

[1] The Vaccine Mandate is incorporated by reference into, and integral to, the Complaint. *See, e.g.*, ECF No. 8 ("FAC"), ¶¶ 53, 55, 378, 394, 417, 427 & 7 n.1; *see also, e.g.*, *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 661 (S.D.N.Y. 2025) (noting that "[i]ncorporation by reference requires a clear, definite and substantial reference to the documents" and that, even when not incorporated by reference, the court may nonetheless consider a document "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint" (internal quotation marks omitted) (quoting, *inter alia*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016))), *aff'd*, No. 25-73-CV, 2026 WL 366443 (2d Cir. Feb. 10, 2026) (summary order).

80-83. The NYPD's standard accommodations form "strongly suggested" that he provide "[s]upporting documentation from you and/or your religious official explaining your religious exemption from the COVID-19 vaccine." *Id.* ¶ 72 (internal quotation marks omitted). In his personal statement, Selegean explained that his Catholic faith forbade him from "participat[ing] in the unethical practice of exploiting aborted babies in the production of the vaccine" because "God has a plan for every one of those innocent lives, and the termination of them is equally inhumane as murder." *Id.* ¶ 77. He also expressed willingness to "follow any and all mandates involving masks and social distancing, and weekly COVID testing" in lieu of vaccination. *Id.* Selegean did not submit any additional documentation. *See id.* ¶¶ 195-97. On February 8, 2022, the NYPD denied Selegean's request. *See id.* ¶ 91. The denial consisted of a pre-printed form in which three options were checked: "[i]nsufficient or missing religious documentation," "[w]ritten statement does not set forth how religious tenets conflicts [sic] with vaccine requirement," and "[n]o demonstrated history or vaccination/medicine refusal." *See id.* ¶¶ 92-96.

Selegean timely appealed the NYPD's denial to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel (the "Citywide Panel"), a citywide panel, *see id.* ¶¶ 129-31, 138-39, again invoking God and "explaining . . . that aborted fetal cells were used to create the COVID-19 vaccines," *id.* ¶ 135; *see id.* ¶ 136. On July 27, 2022, the Citywide Panel denied Selegean's appeal without further explanation. *Id.* ¶¶ 137, 267-69, 278, 296. He was informed that he had seven days to submit proof of vaccination or he would be placed on Leave Without Pay ("LWOP") and eventually terminated. *Id.* ¶¶ 269, 296. On August 1, 2022, to avoid termination and preserve his retirement benefits, Selegean submitted his pension application "under duress & under protest"; his retirement became effective about a month later. *See id.* ¶¶ 297-300, 308. As of February 9, 2023, the Department of Health and Mental Hygiene

amended the Vaccine Mandate, no longer requiring exclusion from the workplace for City employees who do not provide proof of vaccination. *Id.* ¶ 362.

On July 25, 2025, Selegean filed this lawsuit against the City and the NYPD. *See* ECF No. 1. In the operative Complaint, he alleges a violation of the Free Exercise Clause of the First Amendment of the U.S. Constitution. *See* FAC ¶¶ 374-82. He also brings claims for failure to accommodate his religious beliefs under the New York State Human Rights Law, N.Y. EXEC. LAW § 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. ADMIN. CODE § 8-101 *et seq.* ("NYCHRL"), *see id.* ¶¶ 383-433, as well as for failure to engage in a cooperative dialogue under the NYCHRL, *see id.* ¶¶ 434-52. He seeks declaratory relief and compensatory damages. *See id.* at Prayer for Relief.[2]

**LEGAL STANDARDS**

In reviewing a Rule 12(b)(6) motion, a court must accept all factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

[2] Defendants argue in their motion that Selegean is not entitled to punitive damages on the ground that they are unavailable against a municipality. *See* ECF No. 14 ("Defs.' Mem."), at 16. Selegean, however, does not appear to request such damages, *see* FAC at Prayer for Relief. In any event, he fails to respond to Defendants' arguments on this point, so any request for punitive damages would be abandoned. *See, e.g.*, *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *7 (S.D.N.Y. Sept. 26, 2019) ("It is well established that a district court may, and generally will, deem a claim abandoned when a counseled plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (cleaned up) (citing cases)), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (summary order).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

**DISCUSSION**

Defendants move to dismiss all of Selegean's claims for failure to state a claim. *See* ECF No. 14 ("Defs.' Mem."). The claims against the NYPD require little discussion because, pursuant to Section 396 of the New York City Charter, N.Y. CITY CHARTER § 396, the NYPD is a non-suable entity, *see, e.g.*, *Wellington v. City of New York*, No. 24-CV-08743 (JLR), 2026 WL 1179529, at *4 (S.D.N.Y. Apr. 30, 2026) (collecting cases). Accordingly, all claims against the NYPD must be and are dismissed. That leaves Selegean's claims against the City, which the Court takes in turn.

**A. Free Exercise Claim**

The Court begins with Selegean's Free Exercise claim. *See* FAC ¶¶ 374-82. The Free Exercise Clause, applicable to the states through the Fourteenth Amendment and enforceable against the City under Section 1983, 42 U.S.C. § 1983, "protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion," *Kane v. de Blasio*, 19 F.4th 152, 163-64 (2d Cir. 2021) (internal quotation marks omitted). This protection, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990). Thus, "[w]here the government seeks to enforce a law that is neutral and of general applicability," it "need only demonstrate a rational basis for its enforcement."

*Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). Laws that are not neutral or generally applicable, however, are subject to strict scrutiny and, thus, survive only if they are narrowly tailored to advance a compelling government interest. *See Vesterman v. N.Y.C. Dep't of Educ.*, No. 25-2731-CV, 2026 WL 1580250, at *1 (2d Cir. June 3, 2026) (summary order). Additionally, although religious exemptions to vaccine mandates are not constitutionally required, *see We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015), "if a government entity chooses to offer [such] exemptions," "it must do so in a non-discriminatory way," *Carbone v. City of New York*, No. 25-CV-2368 (JGK), 2025 WL 3206658, at *3 (S.D.N.Y. Nov. 17, 2025) (internal quotation marks omitted).

In this action, Selegean expressly disclaims any facial Free Exercise challenge to the Vaccine Mandate. *See* ECF No. 17 ("Pl.'s Mem."), at 7-8. That is for good reason, as the Second Circuit has now rejected facial challenges to New York's COVID-19 vaccine mandates on at least three occasions. *See New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330 (2d Cir. 2025) ("*NYFRL*"); *Kane*, 19 F.4th at 164-67; *We The Patriots USA,* 17 F.4th at 281-90. Instead, Selegean brings an as-applied challenge to the Mandate. *See* Pl.'s Mem. 7. In essence, he argues that "the policy and procedures for evaluating" religious accommodation requests "were neither neutral nor generally applicable," *Maiorino v. N.Y.C. Dep't of Sanitation*, No. 25-CV-0097 (LJL), 2025 WL 2928902, at *5 (S.D.N.Y. Oct. 15, 2025), and thus are subject to — and ultimately fail — strict scrutiny, *see* Pl.'s Mem. 8-15. In support of this challenge, Selegean asserts that his request was improperly denied because Defendants (1) dismissed his religious objections to the COVID-19 vaccine as not grounded in official doctrine and (2) viewed his objections as scientifically inaccurate. *See id.*

Although a close call, the Court concludes that Selegean's allegations are sufficient to state a claim under the First Amendment, substantially for the reasons explained by Judge Liman in *Maiorino v. City of New York*, No. 25-CV-0097 (LJL), 2026 WL 1948302 (S.D.N.Y. July 6, 2026), which considered a similar claim (brought by the same counsel).[3] Put simply, Selegean plausibly alleges that the City denied his request for an accommodation "by judging the validity of his religious beliefs rather than the sincerity with which he held them." *Id.* at *6. In his Complaint, Selegean asserts that the City "adopted and implemented a policy and practice of denying religious accommodation requests" that did not conform to the "formal, authoritative tenets of a religious denomination," FAC ¶¶ 233, 239; that "the City's agencies and the Citywide Panel routinely denied requests grounded in personal prayer, spiritual discernment, or individualized communication with the divine" as a result of this policy, *id.* ¶ 234; and that his own application was denied for these improper reasons, *see, e.g.*, *id.* ¶¶ 222-24, 252. *See Maiorino*, 2026 WL 1948302, at *6 (relying on similar allegations in finding that the plaintiff stated a Free Exercise claim). More specifically, as explained, Selegean alleges that he did not submit documentation from any religious official in support of his exemption request, as his beliefs on COVID-19 vaccination did not align with those of the Catholic Church. *See, e.g.*, FAC ¶¶ 80, 194-95, 221. And he notes that the NYPD subsequently denied his request in part

---

3 Defendants suggest that the Court should not rely on Judge Liman's decision denying the City's motion to dismiss in *Maiorino* because he subsequently issued a decision in that case sanctioning plaintiff's counsel, finding, "among other things, that 'Plaintiff's allegation with respect to the City's categorical or differential treatment of Catholic exemption applicants is utterly false and was known to be false because Plaintiff knew at the time of filing the [operative complaint].'" ECF No. 24 (quoting *Maiorino v. N.Y.C. Dep't of Sanitation*, No. 25-CV-97 (LJL), 2026 WL 2098145, at *3 (S.D.N.Y. July 21, 2026)). That may be true (and may be noteworthy), but it is irrelevant in assessing Judge Liman's decision on the motion to dismiss, which explicitly (and properly) presumed the truth of the plaintiff's well-pleaded allegations. *See* 2026 WL 1948302, at 1 n.1, 8 n.8. Moreover, Defendants do not assert that Selegean's Complaint contains the sanctionable problems present in the *Maiorino* complaint.

because it lacked sufficient "religious documentation" and did not "set forth how [his] religious [tenets] conflict[ed] with" the Vaccine Mandate. *Id.* ¶¶ 92-96. When he appealed to the Citywide Panel, moreover, that body affirmed the NYPD's denial without providing any rationale for its decision, *see id.* ¶¶ 267-69, 278, 296, which supports an inference that the Panel adopted or affirmed the NYPD's rationale.[4]

In support of these allegations, Selegean points to internal communications from the Vaccine Mandate's implementing authorities that suggest the NYPD and/or the Citywide Panel questioned the validity of his beliefs. *Cf., e.g.*, *Mid Vt. Christian Sch. v. Saunders*, 151 F.4th 86, 93-94 (2d Cir. 2025) (finding that certain public statements made by a member of a decision-making body prior to imposing disciplinary action evinced hostility toward the plaintiff's religious beliefs and suggested that the body "did not act neutrally toward [those] beliefs"); *Chinchilla v. N.Y.C. Police Dep't*, No. 23-CV-8986 (DEH), 2024 WL 3400526, at *6 (S.D.N.Y. July 12, 2024) (dismissing an as-applied Free Exercise challenge to the NYPD's vaccination exemption procedures where, among other things, the plaintiff's complaint did not "include allegations regarding the beliefs of any NYPD or Citywide Panel personnel—i.e., the individuals who actually reviewed [the] [p]laintiff's application" and so did not allege any relevant statements evincing hostility toward her religious beliefs). For example, Selegean alleges that the NYPD Deputy Commissioner, who was also "the head of [its] Reasonable Accommodation

[4] Defendants' arguments are based in part on the notion that Selegean "alleges that his request was denied due to undue hardship," ECF No. 20 ("Defs.' Reply"), at 4 (emphasis omitted), and that "the denial [of his accommodation request] expressly cited undue hardship," *id.* at 1. But Selegean alleges no such thing. *See* FAC ¶¶ 93-96, 104, 278, 283-84; *see also* ECF No. 17 ("Pl.'s Mem."), at 20 ("[N]either the NYPD nor the Citywide Panel ever cited undue hardship as a basis for denying Plaintiff's request or appeal."). In addition, neither party provides either the NYPD or the Citywide Panel's denials of Selegean's accommodation request, so the Court is bound to accept the Complaint's allegations with respect to those denials as true. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).

Unit," "sent an email to [that] Unit which included the statement, 'There is no legitimate religious basis for exemptions from vaccine mandates in any established stream of Christianity.'" FAC ¶ 192; *see also Annicelli v. v. N.Y.C. Police Dep't*, No. 25-CV-2424 (RMB) (KHP), 2026 WL 871393, at *10 (S.D.N.Y. Jan. 9, 2026).

Granted, Selegean "does not provide a date when the Deputy Commissioner's email was sent in relation to when his exemption request was submitted or [directly] state whether the email was sent" before or after the City scuttled the policies that suffered from the precise constitutional deficiency of which Selegean complains. *Annicelli*, 2026 WL 871393, at *10; *see NYFRL*, 125 F.4th at 334 (explaining that the original City standards "only allowed exemption requests for recognized and established religious organizations and did not honor exemptions for those whose religious beliefs were merely personal" (internal quotation marks omitted)). But, drawing all reasonable inferences in Selegean's favor, "it is [nonetheless] plausible that the email could have been interpreted as a directive to the [NYPD's Reasonable Accommodation] unit making the decisions on applications for exemptions that a religious reason had to be consistent with an 'established stream of Christianity." *Annicelli*, 2026 WL 871393, at *10. And given the stated reasons for denial of Selegean's request, it is plausible that the NYPD refused him an accommodation because it did not comport with high-ranking Catholic officials' public expressions of support for COVID-19 vaccination. *See* FAC ¶¶ 201, 206. Such a denial would violate the Free Exercise Clause. *See, e.g.*, *NYFRL,* 125 F.4th at 335 (vacating the dismissal of an as-applied challenge to a vaccine mandate where the plaintiff, who raised a similar religious objection as Selegean, "pleaded that the Citywide Panel dismissed some of her religious beliefs as too idiosyncratic to be religious in nature"); *Annicelli*, 2026 WL 871393, at *8-11 (sustaining an as-applied challenge to the Vaccine Mandate where the plaintiff sufficiently alleged that the

decision to deny his exemption request was based on the view that his Christian beliefs were idiosyncratic); *Lee v. N.Y.C. Fire Dep't*, No. 24-CV-4772 (VMS), 2025 WL 2772855, at *2 (E.D.N.Y. Sept. 29, 2025) (same where the plaintiff plausibly alleged that "religious accommodations were only provided for applicants who were members of religion that Defendants deemed recognized and established religious organizations" (cleaned up)).

In addition, Selegean further claims that, in seeking "clarification" as to the accommodations process, "a Citywide Panel member" indicated in an email to the Panel's "final reviewer" that he was "mostly seeing folks expressing their view that all Covid vaccinations contain or were tested using fetal stem cells and some personal statements saying I've never taken vaccines ever or not since I became an adult," and that his "understanding from [their] conversation" was that such views "would not constitute sincerely held religious beliefs." FAC ¶ 208 (internal quotation marks omitted). As before, it is unclear when this email was sent. And the communication may well reflect nothing more than one Panel member's confusion. But, once more, drawing all reasonable inferences in Selegean's favor, this statement plausibly suggests that the Panel — which offered no rationale at all for denying his appeal — failed to individually assess whether "the Covid-19 vaccines were produced with aborted fetal cells in a manner that [Selegean] believed would contravene [his] religious beliefs," *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 143 F.4th 51, 67 (2d Cir. 2025), and instead improperly "presuppose[d] the illegitimacy of [those] beliefs," *Kane*, 19 F.4th at 168 (quoting *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018)). Accordingly, in light of these allegations, Selegean states a Free Exercise claim against the City.

**B. Failure-to-Accommodate**

The Court next turns to Selegean's failure-to-accommodate claims under the NYSHRL and NYCHRL. *See* FAC ¶¶ 383-433. To make out a *prima facie* case of religious discrimination based on a failure to accommodate in violation of either law, a plaintiff "must demonstrate that (1) he has a bona fide religious belief conflicting with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." *Chinchilla*, 2024 WL 3400526, at *7 (cleaned up). Wisely, the City does not dispute that the allegations in the Complaint are sufficient to establish all of these elements and, thus, that Selegean pleads a *prima facie* case. *See* Defs.' Mem. 10-13; ECF No. 20 ("Defs.' Reply"), at 6-9. Instead, it contends that Selegean's claims fail as a matter of law because granting him a religious accommodation would have resulted in undue hardship. *See* Defs.' Mem. 10-13; Defs.' Reply 6-9.

That argument, however, is easily rejected. "Undue hardship is an affirmative defense, so it may be raised on a pre-answer motion to dismiss *only* if the facts establishing it are clear from the face of the complaint." *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024) (cleaned up and emphasis added); *see* N.Y.C. ADMIN. CODE § 8-107(3)(b) ("The employer shall have the burden of proof to show such hardship."); N.Y. EXEC. L. § 296(10)(a) (allowing "the employer [to] demonstrate[ ] that it is unable to reasonably accommodate the employee's . . . religious observance or practice without undue hardship"). That is not the case here. Among other things, the NYPD's own mandate allowed for the "reasonable [religious] accommodation" of weekly testing and masking, Vaccine Mandate ¶ 8; FAC ¶¶ 60, 70-71, 73, 286 — i.e., the very accommodation that Selegean sought, FAC ¶ 77. And Defendants granted such accommodations to other NYPD police officers and

detectives, including those with public-facing responsibilities, *see* FAC ¶¶ 108-10, 140-41, and "[a]t least one other detective in the Firearms Suppression Section who worked in the same office as [Selegean]," *id.* ¶ 142. In fact, "the [NYPD] permitted [Selegean himself] to work with accommodations — namely, submission of weekly negative [COVID-19] test results — while his request for an exemption was pending." *Rizzo*, 2024 WL 3274455, at *3; *see* FAC ¶¶ 84, 325. And neither the NYPD nor the Citywide Panel cited undue hardship in denying Selegean's request. FAC ¶¶ 93-96, 104, 278, 283-85; *cf., e.g.*, *NYLR,* 125 F.4th at 333 (finding, in resolving motion to dismiss constitutional religious accommodation claims, that the plaintiffs failed to "plead allegations that contradict[ed] [the Citywide Panel's] finding" that "irrespective of their sincerely held religious beliefs, their requests presented an 'undue hardship' because each . . . [was] a classroom teacher who . . . cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population" (internal quotation marks omitted)). These allegations "tend to demonstrate the feasibility of offering [the masking-and-testing] accommodation to [Selegean]," rendering dismissal on the basis of undue hardship inappropriate. *Chinchilla*, 2024 WL 3400526, at *10.

Indeed, contrary to the City's position, *see* Defs.' Mem. 12-13; Defs.' Reply 6, 8-9, nothing more is required — under *NYFRL* or otherwise — to defeat its argument that "the facts necessary to establish [an undue hardship] defense are evident on the face of the complaint," *Spinelli v. Nat'l Football League*, 903 F.3d 185, 199 (2d Cir. 2018) (internal quotation marks omitted); *see, e.g.*, *Annicelli*, 2026 WL 871393, at *13 (rejecting "the City's attempt to rebut [the] [p]laintiff's factual allegations regarding similarly situated employees" where the plaintiff had not "nam[ed] specific individuals who were accommodated," but "alleged specific numbers of NYPD employees were granted accommodations and purported policies regarding how

specific Christian denominations were treated vis-à-vis the policy" as well as "that large numbers of people were permitted to work unvaccinated"); *Chinchilla*, 2024 WL 3400526, at *10 (finding that allegations that the NYPD permitted "other employees to test and mask" meant the undue-hardship affirmative defense was not clear from the face of the complaint); *Rizzo*, 2024 WL 3274455, at *3 (same where the plaintiff alleged that, among other things, a city agency "granted [religious] accommodations for other employees similarly situated to [the plaintiff]").

Likewise, nothing in Selegean's Complaint suggests that his role at the NYPD involved regular contact with "vulnerable" individuals or otherwise entailed community caretaking, medical, or custodial work, so the City cannot claim undue hardship on this basis. *See* Defs.' Mem. 11; *cf., e.g.*, *Mumin v. City of New York*, 760 F. Supp. 3d 28, 47, 49-50 (S.D.N.Y. 2024) (finding undue hardship apparent on the face of the complaint where the Department of Corrections ("DOC") denied the plaintiff a religious accommodation due to "the unique problems facing the DOC during the COVID-19 pandemic," including "the fact that the DOC's employees worked in facilities that housed a vulnerable population"). And to the extent the City invokes cases in which undue hardship was apparent from the fact that granting a religious exemption would cause the employer to violate state law, *see* Defs.' Mem. 11-12 (citing, among other cases, *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 509 (S.D.N.Y. 2023)), it "fail[s] to explain how granting the plaintiff's exemption in this case would have created a similar conflict with [such] law," *Carbone*, 2025 WL 3206658, at *8. Accordingly, the City's motion to dismiss Selegean's failure-to-accommodate claims must be and is denied.

**C. Failure to Engage in Cooperative Dialogue**

That leaves Selegean's claim for failure to engage in cooperative dialogue as required by the NYCHRL. *See* FAC ¶¶ 434-52. The NYCHRL provides that "[i]t shall be an unlawful

discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation." N.Y.C. ADMIN. CODE § 8-107(28)(a). That requires a good-faith "written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address [those] needs; . . . and the difficulties that such potential accommodations may pose for the covered entity." *Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 126 N.Y.S.3d 98, 103 (App. Div. 1st Dep't 2020) (internal quotation marks omitted); *see* N.Y.C. ADMIN. CODE § 8-102. In *Marsteller v. City of New York*, 192 N.Y.S.3d 18 (App. Div. 1st Dep't 2023), the First Department held that the NYPD's process for reviewing religious accommodation requests satisfied the NYCHRL's requirements regarding a cooperative dialogue. *See id.* at 20-21. "Subsequent decisions have relied on *Marsteller* to reject cooperative dialogue claims from other NYPD officers or expanded *Marsteller*'s reasoning to other City agencies." *Chinchilla*, 2024 WL 3400526, at *12 (collecting cases); *see, e.g.*, *Annicelli*, 2026 WL 871393, at *14 (recommending dismissal of cooperative dialogue claim as to NYPD employee, citing *Marsteller*); *DeFonte v. N.Y.C. Fire Dep't*, 251 N.Y.S.3d 703, 706 (App. Div. 2d Dep't 2026) (finding that the Fire Department offered the petitioner a cooperative dialogue, relying on *Marsteller*); *Carbone*, 2025 WL 3206658, at *8-9 (same with respect to the Department of Transportation).

Selegean's claim fails for the same reasons. Selegean "availed himself of the accommodation and appeals process. First, he requested an accommodation from the NYPD, and then, after the NYPD denied his request and gave him instructions on how to appeal this denial, [Selegean] appealed to the Citywide Panel." *Annicelli*, 2026 WL 871393, at *14; *see* FAC ¶¶ 70-75, 91-96, 129, 135, 267, 269. That satisfies the cooperative dialogue requirements. Indeed, unlike in *Lee* and *Rizzo* — the main cases upon which Selegean relies, *see* Pl.'s Mem.

24-25 — there is no allegation that either the NYPD or the Citywide Panel failed to "follow through on its own request for information or respond to [any] request for clarification," *Annicelli*, 2026 WL 871393, at *15 (distinguishing *Rizzo* on this basis); *see also Lee*, 2025 WL 2772855, at *5 (indicating that the plaintiff alleged, among other thing, that "her request for further information from [her employer] was unanswered"), or that Defendants otherwise failed to "compl[y]" with their own established "process for deciding reasonable accommodation requests," *Lee*, 2025 WL 2772855, at *5; *see, e.g.*, *Maiorino,* 2026 WL 1948302, at *14-15 (distinguishing *Lee* and *Rizzo* and finding that the plaintiff's NYCHRL claim failed because "he does not allege that he asked his employer for more information about the accommodations process, or that his employer ever ignored such attempts"). For these reasons, Selegean's cooperative dialogue claim must be and is dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, Selegean's claims against the City of New York for violations of the Free Exercise Clause of the U.S. Constitution and for failure to accommodate his religious beliefs under the NYSHRL and NYCHRL survive. All of Selegean's other claims, namely all claims against the NYPD and his cooperative-dialogue claim, are dismissed.

Further, the Court declines to grant leave to amend as to the dismissed claims. Although leave to amend should be freely given "when justice so requires," FED. R. CIV. P. 15(A)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). And here, there are several reasons to exercise that discretion to deny leave to amend. First, the Court already granted Selegean an opportunity to amend and explicitly warned that he would "not be given any further opportunity

to amend the complaint to address issues raised by the motion to dismiss." ECF No. 16; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)). Second, Selegean does not suggest any facts in his possession that would remedy the defects in his claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."). And third, the problems with Selegean's claims against the NYPD, as well as his cooperative-dialogue claim, are substantive. As such, amendment of those claims would almost certainly be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases). Accordingly, the Court declines to grant Selegean leave to amend to revive the claims that have been dismissed.

Unless and until the Court orders otherwise, the City shall answer Selegean's remaining claims **within three weeks of the date of this Opinion and Order**. *See* FED. R. CIV. P. 12(a)(4)(A). In addition, the stay of discovery previously entered in this case, ECF No. 16, is hereby lifted. Finally, the initial pretrial conference, which had previously been adjourned, is hereby reinstated and RESCHEDULED for **September 8, 2026, at 9:00 a.m.** The conference will be held remotely by telephone in accordance with Rule 3(B) of the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman. The parties should join the conference by calling the Court's dedicated conference line at (855) 244-8681 and using access code 2303 019 3884, followed by the pound (#) key. When prompted for an attendee ID number, press the pound (#) key again. Counsel should review and comply with the rules regarding teleconferences in the Court's Individual Rules and Practices in Civil Cases,

including Rule 2(B)(i), which requires the parties, **no later than 24 hours before the conference**, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may speak during the conference and the telephone numbers from which counsel expect to join the call. The parties are reminded that, no later than the **Thursday before the conference**, they must submit a joint status letter and proposed Case Management Plan. *See* ECF No. 6.

The Clerk of Court is directed to terminate the New York Police Department as a Defendant and to terminate ECF No. 12.

SO ORDERED.

Dated: August 11, 2026
New York, New York

JESSE M. FURMAN
United States District Judge